IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02028-PSF-PAC

MARK EVERS,

    Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO;
GEORGIA LESH-LAURIE, in her individual and official capacities;
W. JAMES SMITH, in his individual and official capacities; and
JAMES SHORE, in his official capacity,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Georgia Lesh-Laurie and W. James Smith's ("Individual Defendants") Motion for Summary Judgment (Dkt. # 95), filed August 31, 2005; all defendants' official capacity ("University") Motion for Summary Judgment (Dkt. # 97), filed August 31, 2005, and Plaintiff Mark Evers's Motion for Summary Judgment (Dkt. # 98), filed August 31, 2005. The three motions are fully briefed.

**I. BACKGROUND AND PROCEDURAL HISTORY**

On August 12, 2004, Plaintiff Mark Evers filed this action in Denver District Court. Defendants removed the case to this Court on September 30, 2004. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Mr. Evers brings all

but one of his claims under 42 U.S.C. § 1983. The sole non-§ 1983 claim, breach of contract, is subject to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Mr. Evers filed a Second Amended Complaint on January 5, 2005 (Dkt. # 37), alleging six causes of action arising from his termination as Managing Director of Extended Studies at the University of Colorado at Denver ("UCD") and the creation and publication of an Internal Audit Report. He claims that the University defendants, through his termination by Mr. Smith and the creation and publication of an Internal Audit Report violated his liberty rights under the Fourteenth Amendment (first claim for relief), violated his right to procedural due process under the Fourteenth Amendment (second claim for relief) and violated his right to substantive due process under the Fourteenth Amendment (third claim for relief). In addition, he alleges that Mr. Smith (fourth claim for relief) and Ms. Lesh-Laurie (fifth claim for relief), in their individual capacities, deprived him of his Fourteenth Amendment rights. Finally Mr. Evers alleges a breach of contract against The Regents of the University of Colorado (sixth claim for relief).

### A. Factual Background

On June 9, 1999, Mr. Evers was offered a full-time, exempt professional position as Managing Director for the Extended Studies Office of the College of Liberal Arts and Sciences by Defendant Mr. Smith. Letter of Offer at 1, attached as Ex. A to Indiv. Def.'s S.J. Br. This letter stated that the appointment began on July 1, 1999 with salary set on a fiscal year basis. *Id.* at 1. It further stated that "[t]he laws of the State of Colorado require that your contract of employment in the position of Managing Director be

subject to termination by either you or the University at any time during its term and that you be deemed to be an employee-at-will in this position." *Id.* at 2. The letter included Mr. Evers's signature indicating that he "accept[ed] the above offer with the understanding that this is an at-will appointment." *Id.* at 4.

The Extended Studies Office, through a series of partnerships with foreign universities, offers UCD students the opportunity to study abroad while earning UCD credit. The University of Colorado was operating under a budget crisis during fiscal years 2000 and 2001, and several positions in the Extended Studies Office were left vacant as a result. Evers Aff. At 1, attached as Ex. B to Pl.'s Resp. In 2001, Mr. Evers sought additional remuneration for several employees who took on additional duties in light of the vacant positions. Evers Dep. at 131:18–132:2, attached as Ex. C to Indiv. Def.'s S.J. Br. His supervisor, Mr. Smith, testified that he did not approve the requests for two of the employees. Smith Dep. at 56:9–10, attached as Ex. D. to Indiv. Def.'s S.J. Br. Mr. Evers nonetheless submitted the requests to UCD's Office of Academic Affairs. Evers Dep. at 132:3–5. Although one employee was granted additional compensation, two other requests were denied on the basis that the policy and procedure for additional payment for unclassified staff had changed, requiring Mr. Smith's approval. *Id.* at 132:18–133:24.

Mr. Evers then "began to explore other options . . . to be able to reward their exemplary or extraordinary service." *Id.* at 135:5–7. He approved administrative leave for the employees–essentially, time off of work with pay–without the approval of Mr. Smith. Pl.'s Resp. at 5. A total of 132 hours of administrative leave was taken under

Mr. Evers's direction. Evers Dep. at 332:3–6. Mr. Evers contends that this action was consistent with University policy and state law. Pl.'s Resp. at 5.

In May 2002, the Office of Internal Audit for the University of Colorado conducted an investigation of possible fiscal misconduct in the Extended Studies office. Mr. Evers contends that this investigation was instigated at the request of Mr. Smith, Pl.'s Resp. at 2, a charge Mr. Smith denies. Smith Dep. at 36:10–18; *see also* Indiv. Def.'s S.J. Br. at 3 (claiming that allegations of time sheet manipulation and other fiscal misconduct by an Extended Studies employee reported to the UCD human resources department prompted the investigation).[1] This audit resulted in no finding of fraud or wrongdoing. Pl.'s Resp. at 2; Eden Aff. at 2, attached as Ex. E to Pl.'s Resp.; Hudson Aff. at 1, attached as Ex. F to Pl.'s Resp. However, before this audit issued its final report, one of the assigned investigators was removed from the investigation due to a conflict of interest after he applied for a position in the Extended Studies office. Indiv. Def.'s S.J. Br. at 3; Eden Aff. at 1.

A second investigation began, with new investigators.[2] Its final report was officially issued on August 15, 2002, and concluded that "sufficient evidence exists to reasonably conclude that fiscal misconduct has occurred, warranting disciplinary

---

[1]This position is supported by an unsigned memorandum, referred to by plaintiff in his Response at 9 as notes of Rob Eden, detailing a meeting held at UCD suggesting that the investigation began after an employee in the Extended Studies Office made allegations regarding Mr. Evers and the employees to whom administrative leave was given. *See* Ex. O, attached to Pl.'s Resp.

[2]Individual defendants allege that "[t]he investigation conducted by the new set of auditors was not a new investigation. Rather, it merely continued the investigation already underway." Indiv. Def.'s S.J. Br. at 4. Yet, paradoxically, these new investigators were directed "to begin their investigation from the beginning." *Id.*

4

action." Report at 1, 8, attached as Ex. B to Indiv. Def.'s S.J. Br.  More specifically, the report concluded that:

- no conclusive evidence existed to indicate that Mr. Evers circumvented University authority in attempting to process One Time Payments without proper approval or against the instructions of his supervisor;

- evidence indicated Mr. Evers interpreted University and state policies to his benefit and that of his subordinates without seeking authoritative confirmation;

- evidence indicated that Mr. Evers made misrepresentations on a subordinate's appointment documentation, allowing the subordinate additional paid time off to prepare for a teaching assignment;

- Mr. Evers knowingly signed his approval on Time and Leave Reports that falsely reported no leave time, although administrative leave had been taken;

- Mr. Evers knowingly approved a termination date for a subordinate that was seven paid days beyond the date she began employment elsewhere;

- Mr. Evers failed to fulfill his obligation to the University to keep and report accurate financial records.

*Id.* at 6-7.  Although Mr. Evers was interviewed during the investigation, he claims he was not allowed to respond to the report.  Pl.'s Resp. at 2.  He does not deny the specific behavior described in the report, but rather denies that it constituted fiscal misconduct or that the actions violated University or state policy.  *Id.*; Evers Dep. at 325:1–327:15; 332:3–335:25.

Before the release of the final report, on August 12, 2002, Mr. Smith terminated Mr. Evers, citing several reasons, including a vote of no confidence signed by members of Mr. Evers's staff, a loss of support of partners overseas and of academic advisers, and the Internal Audit investigation.  Smith Dep. at 55:23–57:3.  Mr. Smith apparently became aware of the investigation's conclusions on or about August 6, 2002.  *See* Ex.

5

G to Pl.'s Resp. (first page of copy of final report addressed to Mr. Smith and reflecting a date of August 6, 2002). Mr. Evers claims his termination was the result of the Internal Audit investigation only. Pl.'s Resp. at 2.

Following Mr. Evers's termination and the completion of the final report, Ms. Lesh-Laurie, Chancellor of UCD, was charged by Defendant Board of Regents to respond to the Internal Audit report. Ms. Lesh-Laurie adopted the report's findings and determined that a copy of it would be placed in his personnel file for three years. *See* Sec. Am. Compl. at 4, ¶ 21; Indiv. Def.'s S.J. Br. at 5.

### B. Parties' Summary Judgment Positions

Defendants Lesh-Laurie and Smith in their individual capacities seek summary judgment (Dkt. # 95) on the basis that 1) Plaintiff cannot establish deprivation of a liberty interest in violation of his Fourteenth Amendment rights; 2) Plaintiff did not have a property interest with respect to his employment; and 3) Smith and Lesh-Laurie did not act arbitrarily or capriciously or in a "shock the conscience" fashion in terminating Plaintiff–what they claim are the applicable review standards. *See Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (in judging substantive due process claim, standard is "whether challenged government action would 'shock the conscience' of federal judges"). University Defendants' Motion for Summary Judgment (Dkt. # 97) argues that 1) Plaintiff cannot establish a deprivation of a liberty interest; 2) as an employee-at-will, Plaintiff had no property interest in continued employment subject to procedural or substantive due process protections; and 3) Plaintiff cannot identify any contractual provision breached by the University.

Plaintiff's Motion for Summary Judgment (Dkt. # 98) seeks a determination on the issue of University's Eleventh Amendment immunity, citing passage of the College Opportunity Fund Act, C.R.S. § 23-18-101 *et seq.* as precluding University from claiming "arm of the state" status due to the University's financial independence from the state. Thus, Plaintiff seeks to claim damages other than injunctive relief.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment of the defendant, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In addition, "'where the non-moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v.*

*Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

## III.  INDIVIDUAL DEFENDANTS' MOTION

### A.  Deprivation of Liberty Interest Claim

Mr. Evers claims that Mr. Smith and Ms. Lesh-Laurie's actions deprived him of his liberty interests under the 14th Amendment of the U.S. Constitution.  To establish such a claim, Mr. Evers must show the following: 1) defendants made statements impugning the good name, reputation, honor, or integrity of the employee-plaintiff; 2) the statements were false; 3) the statements were made in the course of terminating the plaintiff or foreclosed other employment opportunities; and 4) the statements were published.  *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994), *cert. denied*, 514 U.S. 1015 (1995).  All four elements must be satisfied in order to demonstrate a deprivation of liberty interest claim.  *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1329 (10th Cir. 2004).  Mr. Evers contends that the Internal Audit report at issue, leaked to the press and published in both the *Silver & Gold Record* and the *Rocky Mountain News*, constitutes such unlawful statements.

Here, Mr. Evers cannot raise a genuine issue of material fact as to the Individual Defendants' culpability under the first *Workman* factor.  It is undisputed that the report at issue was created by two investigators who worked for the Internal Audit office of UCD.  Although Mr. Evers contends that the investigation was at the instigation of Mr.

Smith, irrespective of its genesis, Mr. Smith did not make the statements at issue contained in the report. Moreover, no evidence or applicable legal standard suggests that Mr. Smith is otherwise vicariously liable for those portions of the report with which plaintiff takes issue.

Further, Mr. Evers does not allege that Ms. Lesh-Laurie was involved in the investigation or the creation of the report at all–only in the report's placement in his personnel file. Therefore, summary judgment for the Individual Defendants on the liberty interest claim is appropriate. *See, e.g., Sandoval*, 388 F.3d at 1329 (plaintiff failed to raise genuine issue of material fact as to first *Workman* factor where statements not made by defendant).

### B. Procedural and Substantive Due Process Claims

Mr. Evers admits that a property interest in his employment is required for either a procedural or substantive due process claim against Mr. Smith or Ms. Lesh-Laurie in connection with his termination. Pl.'s Resp. at 4-5. He further admits that his "employment status is crucial with respect" to these claims, and that he must be found to have a valid contract of employment for a definite term in order to have a property interest protected by the Due Process Clause of the U.S. Constitution. *Id.* at 11 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-77 (1972)). If he was "found to be an at-will employee, he would have no protected right to due process. *Id.* at 12 (citing *Brown v. Reardon*, 770 F.2d 896, 904 (10th Cir. 1985)).

Mr. Evers has not raised a genuine issue of material fact as to his employment status. His Letter of Offer clearly states that he is an at-will employee. *See* Letter of

Offer, attached as Ex. A to Indiv. Def.'s S.J. Br.  The only evidence that Mr. Evers offers to the contrary is a form entitled "Facutly/Exempt Evaluation and Salary Adjustment," which reflects a salary for the fiscal year 2002-2003 for an appointment beginning July 1, 2002 and ending June 30, 2003.  Faculty Form, attached as Ex. L to Pl.'s Resp.

Even viewing the facts in the light most favorable to Mr. Evers, this form in conjunction with the clear statement of at-will employment in his letter of offer does not create a triable issue of fact as to his employment status.  In the absence of other admissible evidence supporting Mr. Evers's contention, the form merely reflects a salary schedule (as opposed to an employment appointment) for one year at a stated amount.  In other words, the form reveals UCD's intent to pay Mr. Evers the stated salary from July 1, 2002, until June 30, 2003, assuming he continues to be employed by UCD during that time.  There is no reason to believe that it alters the language of the Letter of Offer stating that "[t]he laws of the State of Colorado require that your contract of employment in the position of Managing Director be subject to termination by either you or the University at any time during its term and that [Mr. Evers] be deemed to be an employee-at-will."  Letter of Offer at 2, attached as Ex. A to Indiv. Def.'s S.J. Br.; *see also* Jacobs Decl. at 2, attached as Ex. R to Univ. Def.'s Reply (sworn statement of Kevin Jacobs, Director of Human Resources for UCD and the Health Sciences Center; Mr. Jacobs states that the form does not create an appointment for a one-year term but is rather a record keeping form used to record an employee's salary adjustment).  Therefore, the Court grants summary judgment in favor

of Mr. Smith and Ms. Lesh-Laurie on plaintiff's procedural and substantive due process claims.

## IV. UNIVERSITY DEFENDANTS' MOTION

### A. Deprivation of Liberty Interest Claim

As explained above, Mr. Evers must satisfy the four *Workman* factors to state a claim for deprivation of his liberty interest. Mr. Evers does not contend that any of the University defendants–Regents of the University of Colorado, Ms. Lesh-Laurie, Mr. Smith, or Mr. James Shore, the current Chancellor of UCD, in their official capacities–made the statements at issue. The statements were made by investigators from UCD's Internal Audit office. Mr. Evers also does not offer evidence of vicarious liability on the part of the University defendants.

Moreover, Mr. Evers fails to meet the second *Workman* factor–that the statements were false. He admits the underlying actions contained in the report, but disputes the conclusions drawn therefrom and disputes that his actions were in violation of University policy. He contends that because there is no indication of personal gain or of the requisite intent to commit fraud, a material issue of fact exists regarding the report's falsity. Pl.'s Resp. at 10. Additionally, the first investigation did not conclude that Mr. Evers engaged in fraudulent conduct.

These arguments to not raise a triable issue of fact as to the report's falsity. Although the approved administrative leave was not for Mr. Evers but for other workers, the investigators found personal gain on the part of Mr. Evers due to the fact that he was able to compensate subordinates without impacting his budget and he was able to

11

avoid a confrontation with his supervisor about the rejection of the payment requests. *See* Report at 7, attached as Ex. B to Indiv. Def.'s S.J. Br.  Although Mr. Evers produces significant documentation suggesting that the University and state administrative leave policies as applied to professional exempt employees was confusing at best, this evidence does not refute the factual assertions made in the report:  that Mr. Evers interpreted those policies to his benefit and that of his subordinates without seeking authoritative confirmation and that he knowingly signed time sheets that reflected administrative leave as time worked.  Indeed, any intent to deceive by him is questioned and downplayed in the report itself (*see* Report at 5, attached as Ex. B to Indiv. Def.'s S.J. Br. ("either an attempt to deceive, or exceptionally bad judgment")) and in Ms. Lesh-Laurie's letter to plaintiff regarding the report.  Lesh-Laurie Letter, attached as Ex. Q to Pl.'s Resp. ("[A]lthough we believe an intent to deceive was shown, it is clear also that you did not believe you were acting unlawfully in permitting the leaves that you approved.").  Institutional or bureaucratic benefit through financial legerdemain by an administrator who does not line his pockets may still benefit him, albeit indirectly.  Plaintiff has not met his burden that this was not the case here.

Mr. Evers simply does not present sufficient evidence to create an inference that the statements contained in the report were false.  His own deposition testimony indicates the contrary.  Evers Dep. at 124:24–125:14; 324:25–327:12; 332:3–333:2. Despite his professed good-faith beliefs in the legitimacy of his admitted actions, the investigation concluded that they violated University policy.  Based on this record the

Court cannot disagree. *See Harjo v. Varnum Public Schools*, 166 F.3d 347 at *3 (Table) (10th Cir. Nov. 27, 1998) ("Here, plaintiff did not dispute the substantial truth of the conduct charged, only the inferences to be drawn from such conduct. . . . As plaintiff did not raise a factual question regarding the falsity of the conduct charged, he did not demonstrate a liberty deprivation entitling him to due process."); *but see Melton v. City of Oklahoma City*, 928 F.2d 920, 929 n.14 (10th Cir.), cert. denied, 502 U.S. 906 (1991) (suggesting that an intent to report a fact for the purpose of creating a false impression may create defamation liability for a liberty interest deprivation).

Mr. Evers does specifically contend that two of the factual allegations in the report are false–that he made misrepresentations on a subordinate's appointment documentation, allowing the subordinate additional paid time off to prepare for a teaching assignment, and knowingly approving a termination date for a subordinate that was seven paid days beyond the date she began employment elsewhere. *See* Pl.'s Resp. at 6. However, again his version of those events does not materially differ with the version contained in the report. Rather, Mr. Evers essentially challenges the report's conclusions based on his actions in signing off on the paperwork for the two employees at issue, actions he admits.

But the report here simply attempted to set forth the universe of plaintiff's plausible motives in acting in a manner deemed fiscal misconduct in violation of University policy ("an attempt to deceive, or exceptionally bad judgment") in interpreting without authority a conflict he perceived between state and University policy and concealing his decision to award an employee benefit prohibited under University

13

policy. Internal Audit Report at 5. While neither conclusion is complementary toward plaintiff, neither are these alternatives both false. It was not unconstitutional for the University to conclude that one or the other explanation for plaintiff's actions was warranted, and either warranted discipline. Moreover, even if plaintiff did not directly benefit financially from his actions in question, that does not negate the clear implication that his actions were designed to and did benefit him and his staff in his role as Managing Director of the Extended Studies Office. Finally, the investigators' conclusion that plaintiff's explanation that an employee who already began full-time work elsewhere was nonetheless expected to work an additional eight hours for the University was "unreasonable" and "highly unlikely" (Internal Report at 4, 3) cannot be called false. Rather, such a conclusion is supported by both the evidence and common sense.

     Plaintiff does not state a claim for deprivation of his liberty interest sufficient to survive summary judgment where he does not present admissible evidence to support his allegations that the statements are false and to refute admissible evidence to the contrary. *See also Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("In a response to a motion for summary judgment, a party cannot rest on . . . speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party. The litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.") (internal citations and footnote omitted). Here plaintiff

has failed to come forward with enough evidence on the *Workman* factor of "falsity" to warrant a trial against the University defendants on his § 1983 official capacity claims.

### B. Procedural and Substantive Due Process Claims

For the reasons stated above, Mr. Evers has not shown a protected property interest and therefore his claims for deprivation of procedural or substantive due process cannot survive summary judgment.

### C. Breach of Contract Claim

Similarly, Mr. Evers has not produced any evidence belying his status as an at-will employee. His bare allegation that the Faculty Form setting forth his salary beginning on July 1, 2002 is "specific enough to constitute a contract" in the absence of any factual support for his position and in the face of evidence to the contrary does not raise a triable fact as to his employment status.

## V. PLAINTIFF'S MOTION

Based on the outcomes of the defendants' motions for summary judgment, consideration of plaintiff's motion for summary judgment on the University's status as an arm of the state is unnecessary. The Court denies it as moot.

## VI. CONCLUSION

For the foregoing reasons, Defendants Georgia Lesh-Laurie and W. James Smith's Motion for Summary Judgment (Dkt. # 95) and Defendants Regents of the University of Colorado et al's Motion for Summary Judgment (Dkt. # 97) are GRANTED. Plaintiff Mark Evers's Motion for Summary Judgment (Dkt. # 98) is DENIED as moot.

The Clerk of the Court is directed to enter judgment for the defendants.  The January 19, 2006 Final Trial Preparation Conference is vacated.

DATED: January 17, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge